IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **DONALD BLUBAUGH** | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. 6:22cv397-JDK** |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY** | § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was referred for findings of fact, conclusions of law, and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636. Having considered Plaintiff's brief (ECF 12), the Commissioner's brief (ECF 15), and Plaintiff's reply brief (ECF 16), the Court recommends that the Commissioner's final decision is **AFFIRMED**.

### PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income on December 16, 2019, alleging a disability onset date of May 15, 2018. The application was denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a telephone hearing on November 18, 2021, and issued an unfavorable decision on December 14, 2021. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request for review on August 17, 2022. Plaintiff then filed this lawsuit on October 7, 2022, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a

claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment"

is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given her impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing her past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, a plaintiff must show that she was disabled on or before the last day of her insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows

that she cannot perform her past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

The procedure for evaluating a mental impairment is set forth in 20 CFR §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 CFR §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 CFR §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 CFR §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three areas of function, and is "none" in the fourth area of function, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 CFR §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 CFR §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 CFR §§ 404.1520a(d)(3) and (e)(2), 416.920a(d)(3) and (e)(2).

# ALJ'S FINDINGS

The ALJ made the following findings in the December 14, 2021 decision:

1. The claimant has not engaged in substantial gainful activity (SGA) since December 16, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: lumbar spine impairment, anxiety disorder, depression, and bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except: The claimant is able to lift or carry, push, or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour day and stand or walk a combined total of six hours out of an eight-hour day. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally stoop. The claimant can understand, remember, and carry out simple tasks. The claimant can tolerate occasional contact with coworkers, supervisors, and members of the general public. The claimant could adapt to occasional changes in a work setting.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 2, 1967 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 16, 2019, the date the application was filed (20 CFR 416.920(g).

# ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at his hearing before the ALJ on November 18, 2021. Plaintiff testified that he was not currently employed, but he had performed some part-time, temporary work in 2019 and 2020 detailing cars on a used car lot. At the time, he drove himself to and from work but he stated that he no longer drives a car. Plaintiff's prior included working for a poultry factory doing sanitation work, working on air ducts for a metal fabricator, dog grooming, and cooking in a restaurant. When asked why he could no longer work full-time, Plaintiff responded "[b]ecause I just hurt," and "the mental I just couldn't deal with it."[1]

Plaintiff testified that he received mental health treatment when he was living in Oklahoma City. He stated that he spent a week or so at a mental hospital and was diagnosed with paranoid schizophrenia. Plaintiff testified that he hears voices. He submitted that he still takes medication for this condition. Plaintiff explained that he received mental health treatment at Edwin Fair and Grand Lake. The ALJ asked Plaintiff's attorney to obtain records from Edwin Fair and update the records from Grand Lake. Plaintiff acknowledged that he previously dealt with alcohol and methamphetamine addictions but stated that he had been sober for years.

Plaintiff testified that he has difficulty bending over or walking very far due to herniated discs in his back and pain in his left knee. He stated that he also injured and re-injured his right shoulder, causing limitations in his ability to lift his arms overhead. Plaintiff explained that he can walk through a store like Walmart, but shopping trips take longer because he needs to stop and take breaks. He estimated that he can lift up to 20 or 30 pounds, except that he cannot lift anything overhead. Plaintiff additionally stated that he experiences migraines that prevent him from being

---

[1] Administrative Record, ECF 9-2, at *47 (Bates stamp p. 46).

able to get out of bed on bad days. Plaintiff testified that he has not followed up with treatment for his back due to financial constraints.

A vocational expert witness, Shelly Eike, also testified at Plaintiff's hearing. Ms. Eike classified Plaintiff's prior work history to include: (1) insulation worker, medium, SVP 6, DOT 863.367-014; (2) cook, fast food, medium, SVP 5, DOT 313.74-010; and (3) industrial cleaner, medium, SVP 2, DOT 381.687-018. The ALJ presented a hypothetical individual with Plaintiff's age, education, and past work experience. The individual is limited to light work with occasional climbing of ramps and stairs, no climbing of ladders and scaffolds, and occasional stooping. The individual can understand, remember and carry out simple tasks, can tolerate occasional contact with coworkers, supervisors, and members of the public, and could adapt to occasional changes in the work environment. Ms. Eike testified that the hypothetical individual could not perform any of Plaintiff's past jobs. She identified the following jobs, however, that would be available: (1) cleaner, housekeeper, light, SVP 2, DOT 323.687-014, with approximately 195,000 jobs in the national economy; (2) retail marker, light, SVP 2, DOT 209.587-034, with approximately 120,000 jobs in the national economy; and (3) small product assembler, light, SVP 2, DOT 706.684-022, with approximately 100,000 jobs in the national economy.

The ALJ presented Ms. Eike with a second hypothetical using the same limitations as the first hypothetical but adding limitations on standing and walking to a combined total of two hours in eight-hour day. Ms. Eike testified that the available light small product assembly jobs would be reduced to approximately 40,000 jobs in the national economy and the cleaner and retail marker jobs would be eliminated. Other jobs, in her experience, that would be available in reduced numbers and would accommodate being seated include: (1) small item inspector, light, SVP 2, DOT 559.687-074, with approximately 25,000 jobs in the national economy; and (2) nut and bolt

assembler, light, SVP 2, DOT 929.587-010, with approximately 15,000 jobs in the national economy.

In a third hypothetical, the ALJ added a limitation for lifting, carrying, pushing and pulling 10 pounds occasionally and less than 10 pounds frequently. Ms. Eike testified that this additional limitation would only accommodate unskilled, sedentary jobs.

*Medical Record*

Plaintiff went to the emergency room on March 11, 2018 with low back pain radiating to the right leg. On examination, Plaintiff had decreased range of motion, pain with movement, muscle spasm, and positive straight leg raise on the left. He was treated with Tylenol #3, prednisone, Norflex, and Toradol.

Plaintiff returned to the emergency room on August 10, 2018 with low back pain. On examination, he had full range of motion and no spinal or costovertebral tenderness. Lab tests showed "mild rhabdomyolysis with presumed myoglobinuria and mild renal insult as would be expected from acute methamphetamine intoxication."[2] Plaintiff tested positive for marijuana and methamphetamine. He was treated with IV fluids and received a referral for substance abuse treatment.

On September 26, 2019, Plaintiff went to the emergency room with low back pain. On examination, Plaintiff exhibited moderate pain, painful range of motion, vertebral tenderness at L3, L4, L5 and sacrum, and positive straight leg raises. Neurological examination was normal with the exception of decreased light touch sensation in the lateral aspect of the left thigh. Plaintiff reported no narcotic use since October 2018. A CT of the lumbar spine showed suspected nerve

---

[2] Administrative Record, ECF 9-7, at *9 (Bates stamp p. 318).

root impingement at L5-S1.  Dr. Allison Blanchard diagnosed a pinched nerve and prescribed Norco, prednisone, and Naprosyn.

Plaintiff received treatment in the emergency room on December 15, 2019, following a golf cart accident.  Plaintiff reported pain in his spine and left foot.  Plaintiff was tender to palpation throughout the spine, on the 2nd to 5th toes of the left foot and on the left wrist.  Plaintiff additionally had soft tissue edema on the left wrist.  He was diagnosed with a toe fracture, strain of the neck muscle, back strain, and left wrist sprain.  He was discharged with prescriptions for Tylenol #3 and Flexeril.

Plaintiff was seen in the emergency room on March 12, 2020 for a cough lasting for one month.  On examination, he had mild tenderness on palpation of the chest and moderate, scattered rhonchi.  A chest X-Ray showed some perihilar prominence with peribronchial cuffing.  He was treated for sinusitis and bronchitis with Rocephin and Toradol.

Records from Grand Lake Mental Health Center show an admission for outpatient care on January 20, 2021 with a diagnosis of schizophrenia.  Plaintiff reported seeking treatment due to hearing voices and depression.  Plaintiff stated that he heard voices since childhood and now hears them daily.  He was recommended for weekly counseling.  An evaluation on February 9, 2021 documents Plaintiff's statements that he stays depressed, has a racing mind, hates being in public, does not sleep well, hears voices, and has variations in concentration.

On May 10, 2021, Plaintiff was treated in the emergency room for testicular pain.  An ultrasound showed asymmetrically increased flow involving the right testicle.  He was discharged with a prescription for Vibramycin.

Plaintiff returned to the emergency room with reported seizure-like activity on September 17, 2021. He did not exhibit seizure symptoms while in the emergency room.  Neurological

examination was normal with 5/5 strength to the upper and lower extremities and no drift. A head CT showed small low density focus right periventricular deep cerebral white matter posterior frontal region measuring 1.2 x 1.2 cm consistent with encephalomalacia/chronic CVA. Plaintiff was referred to neurology for follow-up.

The administrative record includes requests for records from Alliance Health Ponca City Medical Center for March 13, 2020 to September 18, 2021, and from Edwin Fair Mental Health Center for November 1, 2018 to November 1, 2021. Both requests were returned with notations that there are no records for Plaintiff for those dates.

*State Agency Consultants*

A State agency consultant, Dr. James Wright, reviewed the record on September 23, 2020 and identified the severe impairment of a spine disorder. He noted, however, that Plaintiff did not return the function report or work history form and that attempts to get needed information were unsuccessful.[3] Susan Posey, Psy.D., similarly reviewed the record on September 23, 2020, and concluded that the record supports the severe impairment of depressive, bipolar and related disorders, but found insufficient evidence to assess functional limitations due to Plaintiff's failure to return the function report and work history form and an inability to obtain needed information. On reconsideration, Dr. Sarah Yoakam and Joan Holloway, Ph.D., noted that Plaintiff again failed to return his forms and there is insufficient evidence to evaluate the claim.

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff presents one issue for review: whether the ALJ failed to develop the record and reached a legally erroneous RFC determination based on his own unexplained lay interpretation of the medical data. Plaintiff complains that the ALJ improperly relied on a lack of

---

[3] Administrative Record, ECF 9-3, at *5 (Bates stamp p. 74).

ongoing treatment even though he testified that he cannot afford follow-up visits with a specialist. Plaintiff submits that there are no medical opinions of record and the ALJ instead erroneously substituted his lay opinion. Plaintiff submits that the ALJ did not properly develop the record or connect his findings to specific medical evidence in the record.

In response, the Commissioner argues that the ALJ addressed all medical evidence in the record and determined that it is consistent with the assessed range of light work. The Commissioner submits that the ALJ pointed to specific medical evidence, including all objective examination findings from Plaintiff's emergency room visits, and considered his testimony concerning his limitations and his activities. The Commissioner points to Plaintiff's testimony that, after the alleged disability onset date, Plaintiff worked part-time detailing cars—an activity noted by the ALJ to be above the range of light work—as substantial support for the ALJ's finding that he has the residual functional capacity perform a limited range of light work. The Commissioner denies that Plaintiff's lack of ongoing treatment resulted from a lack of financial resources. Instead, the Commissioner asserts that the ALJ properly pointed out inconsistencies between Plaintiff's subjective complaints and the objective medical evidence. The Commissioner additionally notes that the administrative record documents methamphetamine, marijuana, and alcohol use, showing a choice to invest in those substances instead of medical care. Finally, the Commissioner argues that the ALJ assessed restrictive mental limitations to account for the abnormal mental status examination findings in the record. The Commissioner concludes that the ALJ had sufficient evidence to reach his findings without ordering a consultative examination.

Plaintiff's reply brief reiterates his assertion that the record was insufficient and the ALJ should have requested a consultative examination. Plaintiff submits that the medical record here

is wholly insufficient for the ALJ to reach his findings. Plaintiff characterizes the ALJ's findings as "speculative" and "unexplained."

The issues raised by Plaintiff all concern the ALJ's RFC analysis. It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

A. *Inability to Afford Treatment*

Plaintiff asserts that the ALJ improperly relied on a lack of treatment without considering his inability to afford that treatment. After summarizing the medical record and Plaintiff's testimony, the ALJ referenced a lack of ongoing treatment twice:

> Looking at the record, while claimant has some objective findings on his back, *there is no evidence of ongoing treatment*. Looking at his activities, he worked post alleged onset date performing car detailing 2–3 days per week (pursuant to his testimony). Given the evidence, the claimant could do above range of light work with occasional stooping.

Administrative Record, ECF 9-2, at *23 (Bates stamp p. 22) (emphasis added). In the next two paragraphs the ALJ detailed the mental status assessments in February 2021, including Plaintiff's reports of depression, difficulty being in public, variations in concentration, normal speech quality, neat appearance, good judgment, appropriate affect, average

13

intellectual assessment, normal behavior, complaints of auditory hallucinations, intact memory, good insight, good decision-making ability, mild problems with friendships, living situation, and access to health care services, moderate problems with physical health, daily marijuana use when available, and alcohol use. *Id*. at *24 (Bates stamp p. 23). The ALJ then concluded that "[o]verall, there is *minimal evidence of psychological treatment* but the evidence that is there, is consistent with the above psychological limitations." *Id*. (emphasis added).

A medical condition that would not be disabling with appropriate surgery, treatment or medication may nevertheless be disabling for a claimant who cannot afford that treatment. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). The claimant must show both that he "cannot afford the prescribed treatment or medicine" and that he "can find no way to obtain it." *Id*. The assessment of a plaintiff's inability to pay for medical care is not necessary if there is no finding that treatment of his impairments would restore his ability to work. *Elam v. Barnhart*, 386 F.Supp.2d 746, 758 (E.D.Tex. Sept. 9, 2005).

Here, the ALJ did not make any findings based on an assumption that Plaintiff's condition would be improved with more treatment. Instead, the ALJ considered Plaintiff's condition as is. Notably, the ALJ's decision focuses on the lack of support for the severity of limitations alleged by pointing out inconsistencies between Plaintiff's subjective complaints and the objective examination findings in the record. The ALJ also relied on Plaintiff's self-reported activities, including detailing cars after the alleged disability onset date. The lack of ongoing treatment is noted as additional support for the conclusion that Plaintiff's limitations are not as severe as alleged. Plaintiff has not shown that the ALJ erroneously failed to consider his financial limitations.

B. *Residual Functional Capacity Assessment*

Plaintiff asserts that the ALJ failed to develop the record and relied on his own lay opinion to formulate a residual functional capacity determination. When there is medical evidence or a medical opinion contradicting the ALJ's RFC finding, he "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. An ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 Fed.Appx. 828, 832, n. 6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d at 557).

Here, there is no medical evidence contradicting the ALJ's RFC assessment and there are no medical opinions concerning Plaintiff's functional abilities. There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion. *Myers v. Saul*, 2021 WL 4025993, at *8 (W.D.Tex. Sept. 3, 2021). "The determination of residual functional capacity is the sole responsibility of the ALJ" and he may properly interpret medical evidence to determine the claimant's capacity for work. *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012). The ALJ's RFC assessment is not a medical opinion. *Joseph-Jack v. Barnhart*, 80 Fed.Appx. 317, 318 (5th Cir. 2003). Unlike medical providers and medical consultants, the ALJ considers additional evidence including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record. 20 C.F.R. § 404.1529.

An ALJ has a duty to fully and fairly develop the facts relating to a claimant's application for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Reversal for the ALJ's failure to adequately develop the record, however, is only required if the claimant shows prejudice. *Id*. Ordering a consultative examination is a matter within the ALJ's discretion. *Anderson v.*

*Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (per curiam) (citing *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam)). "An examination at government expense is not required 'unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision.'" *Id*. Stated differently, if necessary for an ALJ to make the disability decision, he should order a consultative examination at government expense. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989).

Plaintiff makes a conclusory argument in his briefing that a consultative examination should have been requested because of the limited medical records. The record shows that the ALJ thoroughly considered multiple physical examinations, in an emergency department setting, and mental status examinations occurring since the alleged disability onset date. In addition to the limitations identified in those examinations, the ALJ considered Plaintiff's testimony concerning his activities during the relevant time period. The ALJ expressly identified and relied upon objective medical evidence, Plaintiff's testimony, inconsistencies between Plaintiff's subjective complaints and the objective findings, and Plaintiff's demonstrated physical abilities to reach his residual functional capacity finding. Plaintiff has not made a showing that a consultative examination was necessary for the ALJ to be able to make a disability decision or that any prejudice resulted from the ALJ's failure to request a consultative examination. *Pierre v. Sullivan*, 884 F.2d at 802.

For the reasons stated, Plaintiff has not shown that the ALJ improperly failed to consider his inability to afford treatment or that the ALJ failed to properly develop the record. The ALJ's RFC finding is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). Written objections shall not exceed eight pages. Local Rule CV-72(c).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 27th day of July, 2024.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE